**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TIMOTHY PAUL BEAGLE,

Defendant - Appellant.

No. 20-1099
(D.C. No. 1:17-CR-00099-RBJ-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **MATHESON**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Timothy Paul Beagle appeals a term of supervised release the district court

imposed as part of a sentence for violating conditions of supervised release.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we vacate the

fifth special condition of supervised release, which requires Beagle to take prescribed

medications and submit to random blood tests to confirm medication compliance, and

_____

* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

we remand for consideration of whether compelling circumstances justify imposing that special condition. We affirm in all other respects.

## I. Background

Beagle was charged with eighteen violations of the conditions of a term of supervised release he was serving on his conviction of being a felon in possession of firearms: eleven instances of possession and use of a controlled substance; multiple failures to report for and participate in psychiatric evaluation and individual counseling; multiple failures to participate in substance-abuse testing as directed by his probation officer; leaving the district without permission of the court or his probation officer; failure to notify the probation officer within 72 hours after being questioned or arrested by a law enforcement officer; and possession of a loaded firearm. Notably, some of those violations occurred after the instant revocation proceeding had commenced, while Beagle was free on bond so he could attend a residential drug-treatment program.

Beagle admitted the violations and agreed to a 24-month period of incarceration in exchange for the government agreeing to not prosecute him for being a felon in possession of a firearm. In addition to imprisonment, the district court sentenced Beagle to twelve months of supervised release and ordered standard, mandatory, and special conditions. At the sentencing hearing, Beagle made no objections to the sentence of supervised release.

The district court entered judgment on March 5, 2020 (Judgment). On March 17, Beagle filed a notice of appeal stating "he intends to appeal the Judgment

2

entered on March 5, 2020." Supp. R., Vol. I at 59. He also filed a motion to correct his sentence pursuant to Federal Rule of Criminal Procedure 35(a), raising various objections. On May 20, the district court denied the Rule 35(a) motion, stating only that "[o]n the same day you filed this motion [you] filed a notice of appeal of the sentence, which is still pending." *Id.* at 62. Beagle did not file a notice of appeal from the order denying his Rule 35(a) motion or amend the notice he filed.

## II. Scope of appeal and standard of review

Before considering the merits of this appeal, we must determine its scope and the applicable standard of review. We conclude that we have jurisdiction to review the district court's Judgment but not the order denying Beagle's Rule 35(a) motion, and because Beagle failed to make a contemporaneous objection to the district court's findings at sentencing, our review is for plain error.

### A. Scope of appeal

Federal Rule of Appellate Procedure 3(c)(1)(B) requires a notice of appeal to "designate the judgment, order, or part thereof appealed." This "designation requirement is jurisdictional." *Williams v. Akers*, 837 F.3d 1075, 1078 (10th Cir. 2016). Beagle's notice of appeal designated only the district court's Judgment. As noted, on the same day he filed the notice of appeal, Beagle filed his Rule 35(a) motion. But nothing in his notice of appeal signaled in an anticipatory manner that he intended to contest the ruling on his Rule 35(a) motion once the district court had disposed of it. And after the district court denied Beagle's Rule 35(a) motion, he did not file another notice of appeal naming the Rule 35(a) order. Consequently, we lack

3

jurisdiction to review the denial of the Rule 35(a) motion. *See United States v. Ortiz*, 741 F.3d 288, 292 (1st Cir. 2014) (concluding, in similar circumstances, that under Rule 3(c)(1)(B), the court lacked jurisdiction to review the denial of Rule 35(a) relief); *United States v. Cartwright*, 413 F.3d 1295, 1299-1300 (11th Cir. 2005) (same, where defendant's notice of appeal, filed contemporaneously with his Rule 35(a) motion, stated only that "he appealed from 'the Final Judgment of Sentence'"); *see also United States v. Sadiq*, 579 F. App'x 485, 490-91 (6th Cir. 2014) (following *Ortiz*); *United States v. Rudzavice*, 583 F. App'x 389, 389 (5th Cir. 2014) (per curiam) (concluding court lacked jurisdiction over dismissal of Rule 35(a) motion because defendant did not file a separate notice of appeal from the dismissal order).

Beagle argues that his appeal of the Judgment was sufficient to encompass the later-issued Rule 35(a) order. His argument proceeds from several observations. First, our jurisdiction under 28 U.S.C. § 1291 is limited to final decisions, the intent of which is to prevent multiple appeals. Second, Federal Rule of Appellate Procedure 4(b)(1)(A)(i) requires a criminal defendant to file a notice of appeal "within 14 days after . . . the entry of either the judgment or the order being appealed." And third, filing a notice of appeal "does not divest a district court of jurisdiction to correct a sentence under [Rule 35(a)]," "affect the validity of a notice of appeal filed before entry of the order disposing of the motion," or "suspend the time for filing a notice of appeal from a judgment of conviction." Fed. R. App. P. 4(b)(5). Beagle's argument also depends on his contention that an order on a

4

Rule 35(a) motion is not a final appealable order within the meaning of the collateral-order doctrine because it is not "separate from the merits," as required under that doctrine, *see, e.g.*, *Flanagan v. United States*, 465 U.S. 259, 265 (1984) (internal quotation marks omitted), but "dependent on the merits," Aplt. Reply Br. at 8-9.

Based on all this, Beagle concludes he was limited to filing only one notice of appeal from the Judgment, and because he had to file that notice within 14 days of the Judgment, his notice was sufficient to encompass the order denying his Rule 35(a) motion.

We reject this novel argument, for two reasons. First, an order denying a Rule 35(a) motion is a final and appealable order under § 1291—without resort to the collateral-order doctrine—because it terminates the litigation on the merits and allows for execution of the judgment. *See Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S 863, 867 (1994) (explaining that § 1291 authorizes an appeal from a "decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment" (internal quotation marks omitted)). Indeed, the collateral-order doctrine is wholly inapplicable because it applies only to orders "that *do not* terminate the litigation." *Id.* (emphasis added).

Second, we disagree with Beagle about the effect of Rule 4(b)(5)'s provision that a notice of appeal filed from a judgment is not rendered premature by the filing of a Rule 35(a) motion. Beagle contends this provision means that a notice of appeal from the judgment is sufficient to encompass a later order on a Rule 35(a) motion

5

even if the notice fails to indicate any intent to appeal from the later order. Beagle has not cited, nor have we found, any authority in support of this contention. And we are of the contrary view.

Federal Rule of Appellate Procedure 4(b)(3)(C) provides that "[a] valid notice of appeal is effective--without amendment--to appeal from an order disposing of any of the motions referred to in Rule 4(b)(3)(A)." Rule 4(b)(3)(A) does not refer to Rule 35(a) motions. That omission makes plain that Beagle's notice of appeal from the Judgment is not effective, absent at least amendment, to appeal from the order denying his Rule 35(a) motion. Consequently, Rule 4(b)(5)'s provision that a Rule 35(a) motion does not render a notice of appeal from a judgment premature is consistent with the principle that, to comply with Rule 3(b)(1)(C), a criminal defendant must adequately designate the order denying a Rule 35(a) motion. A defendant may do so by anticipatorily signaling in the notice of appeal naming the judgment an intent to contest the outcome of the Rule 35(a) motion, or by filing an amended or second notice of appeal specifically designating the Rule 35(a) order. *See Ortiz*, 741 F.3d at 292 (setting forth these options).

In sum, Beagle was not limited to filing one notice of appeal, and because he never designated the order denying his Rule 35(a) motion as Rule 3(b)(1)(C) requires, our jurisdiction is confined to the Judgment.

## B.     Standard of review

Beagle challenges only the procedural reasonableness of his sentence of supervised release, contending that the district court failed to consider the factors set

6

forth in 18 U.S.C. § 3553(a) and failed to adequately explain how the sentence met the requirements of 18 U.S.C. § 3583(d)(2). *See United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) (explaining that procedural reasonableness includes "whether the district court . . . failed to consider the § 3553(a) factors . . . or failed to adequately explain the sentence"). In addressing procedural reasonableness, we ordinarily look for an abuse of discretion, examining the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Ruby*, 706 F.3d 1221, 1225 (10th Cir. 2013). But because Beagle made no contemporaneous objections to procedural reasonableness at sentencing, our review is limited to plain error. *See id.* "Under plain error review, the defendant must demonstrate (1) there is error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1226.

Despite this clear precedent directing a plain-error standard of review, Beagle argues that because he could not separately appeal the order denying his Rule 35(a) motion, we should apply our ordinary standard of review based on the fact that he raised objections in that motion. We reject this argument because, as discussed above, its premise (that Beagle could not separately appeal the Rule 35(a) order) is flawed. Beagle cannot rely on arguments in his Rule 35(a) motion to overcome his failure to raise contemporaneous procedural-reasonableness objections and obtain a more favorable standard of review than plain error.

7

Beagle also contends that we should review any legal issues de novo based on a statement in *United States v. LeCompte*, 800 F.3d 1209 (10th Cir. 2015), that "[l]egal questions relating to the revocation of supervised release are reviewed *de novo*," *id.* at 1215 (internal quotation marks omitted). But *LeCompte* addressed only the denial of a motion to dismiss a petition to revoke supervised release based on an as-applied challenge to the condition the defendant allegedly violated. *See id.* at 1210. It expressly did not reach the defendant's contentions that post-revocation conditions were procedurally unreasonable. *See id.* Thus, *LeCompte* did not have occasion to consider whether plain-error review should apply (nor does it appear it would have, because LeCompte raised objections to the post-revocation conditions at sentencing, *see id.* at 1212).

## III. Merits

Having established that our review is limited to plain error in the Judgment, we proceed to the merits. Beagle contests (1) the imposition of the term of supervised release, (2) three of the standard conditions, and (3) all of the special conditions. We see no plain error.[1]

---

[1] As the government notes, Beagle did not raise plain error in his opening brief, but he did so in his reply. We therefore have discretion to consider plain error notwithstanding his failure to argue for plain error in his opening brief. *See United States v. Leffler*, 942 F.3d 1192, 1198 (10th Cir. 2019). We elect to do so here.

### A. Term of supervised release

Beagle argues that the term of supervised release is procedurally unreasonable because the district court did not discuss or apply the § 3553(a)(2) sentencing factors.[2]  He also complains that the court did not adequately explain why it rejected his attorney's argument at sentencing that the court should not impose a term of supervised release because Beagle had completed a residential drug-treatment program and had come close to completing his original three-year term of supervised release.

The government observes (and Beagle does not dispute) that the twelve-month term of supervised release was within a Sentencing Guidelines range of one to three years.  Because the term fell within the Guidelines range, the district court was not required to "recite any magic words to prove that it considered the various factors Congress instructed it to consider," but had "to provide only a general statement of the reasons for its imposition of the particular sentence."  *United States v. Chavez*, 723 F.3d 1226, 1232 (10th Cir. 2013) (internal quotation marks omitted).  Under

---

[2] Section 3553(a)(2) directs the district court to consider whether the sentence is necessary:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

these circumstances, we will find error "only . . . when the record gives us reason to think that our ordinary presumption that the district judge knew and applied the law is misplaced." *Id.* (internal quotation marks omitted).

We conclude the district court provided a sufficient general statement of its reasons when it rejected Beagle's request for release at the end of his prison term, explaining that "given his history of addiction and his criminal history, to just show him the door at the prison at the end of two years and say good-bye, good luck doesn't seem like a very good transition period." Supp. R., Vol. III at 24.[3] The court found it necessary for the probation officer "to try to work with Mr. Beagle after he is released from prison in a responsible transition back to the community with the kind of treatment that he needs." *Id.* That, the court said, "would be better for him, better for his family, better for the community." *Id.* These findings show the district court considered at least several of the § 3553(a)(2) factors—the seriousness of his violations, the need to protect the public from further crimes, and the need to provide Beagle with treatment. We therefore decline to abandon our presumption that the district court knew and applied the § 3553(a)(2) factors when it imposed supervised release. Seeing no error, we need not reach Beagle's argument that the district court's failure to mention § 3553(a)(2) affected his substantial rights.[4]

---

[3] The underlying firearms conviction was Beagle's tenth felony conviction or adjudication.

[4] Even if we reached this contention, we would reject it. To show that an error affects substantial rights, a party must establish "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United*

10

### B.  Standard conditions

Beagle challenges three of the thirteen standard conditions of supervision—

that he live in a place the probation officer approves, work at least 30 hours per week

unless the probation officer decides otherwise, and not communicate or interact with

anyone engaged in criminal activity or convicted of a felony without first getting the

probation officer's permission.[5]  Beagle contends the district court failed to make

particularized findings regarding these conditions.  But in his opening brief, he

concedes that, under *United States v. Martinez-Torres*, 795 F.3d 1233, 1237

(10th Cir. 2015), district courts are not required to make findings on standard

conditions of supervised release because the Sentencing Guidelines recommend

them.  Then, in his reply brief, Beagle attempts to backpedal from this position,

contending that *Martinez-Torres* is inapplicable because, when imposing the standard

conditions, the district court relied not on the Sentencing Guidelines but on its

opinion that all the conditions the probation officer suggested were "appropriate and

reasonable," Supp. R., Vol. III at 25.

---

*States v. Cook*, 550 F.3d 1292, 1298 (10th Cir. 2008) (internal quotation marks
omitted).  Beagle has not made this showing.  Beagle admitted to all eighteen
violations, one involving possession of a loaded firearm and many involving
possession and use of a controlled substance, some of which occurred after this
revocation proceeding commenced.  Given all this, it is not reasonably probable that
the district court would not have imposed a term of supervised release even if it had
expressly discussed the § 3553(a)(2) factors.

[5] Beagle's objections to the first two conditions are that, because he lives on
Social Security benefits and is disabled, he cannot work and the probation officer
might only approve a place to live that is beyond his means.  His objection to the
third condition is that his wife is a convicted felon.

11

We disagree.  The district court's statement that all the suggested conditions were "appropriate and reasonable" was in response to the probation officer's query whether in fact the court was imposing all the conditions the probation officer proposed.  We see nothing in the court's answer suggesting that it had not relied on the Guidelines recommendation, and we will not assume otherwise.  Consequently, we conclude the court did not err, let alone plainly err, when it made no specific findings regarding the standard conditions.  We are not persuaded to the contrary by Beagle's reliance on the fact that he objected to these conditions in his Rule 35(a) motion, the denial of which, he claims, was plain error.[6]  The arguments belatedly raised for the first time in that motion do not bear on our analysis of what was required of the district court at sentencing.

## C.     Special conditions

District courts have discretion to impose special conditions of release, but the conditions must be constitutionally sound and must satisfy the requirements of § 3583(d).  *United States v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011).  The special conditions "must be reasonably related to at least one of the following:  the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional

---

[6] Beagle posits that the court's denial of his Rule 35(a) motion was based on the mistaken notion that the notice of appeal deprived the district court of jurisdiction to rule on it.  As stated above, we lack jurisdiction to review the denial of the Rule 35(a) motion.

needs." *Id.* (citing § 3583(d)(1)).  The conditions "must involve no greater deprivation of liberty than" reasonably necessary to deter crime, protect the public, and promote the defendant's rehabilitation.  *Id.* (citing § 3583(d)(2)).  And the conditions "must be consistent with any pertinent policy statements issued by the Sentencing Commission."  *Id.* (citing § 3583(d)(3)).  In explaining why it is imposing a special condition, "[a] sentencing court need not provide reasons for each specific special condition that it imposes; rather, it must only provide a generalized statement of its reasoning."  *Id.* at 693 (internal quotation marks omitted).  But "the explanation must be sufficient for this court to conduct a proper review."  *United States v. Francis*, 891 F.3d 888, 899 (10th Cir. 2018) (internal quotation marks omitted).

Here, the district court imposed six special conditions of supervised release.  The only explanation it gave was that it found the special conditions, like all the other conditions the probation officer recommended, "appropriate and reasonable."  Supp. R., Vol. III at 25.  The government concedes, and we agree, that the court plainly erred in not providing sufficient explanation for the special conditions.  The district court's wholly conclusory statement was insufficient.  *See Francis*, 891 F.3d at 899 (concluding that the district court plainly erred by stating only that special conditions satisfied the statutory standard).  But the government contends that Beagle cannot satisfy the third prong of the plain-error test because the record reveals a basis for each of the six special conditions.  *See United States v. Barela*, 797 F.3d 1186, 1192 (10th Cir. 2015) ("Under plain error review, we may vacate special conditions of supervised release only if the record reveals no basis for the conditions.").  We

13

agree with the government except for the fifth special condition concerning medication.

The first special condition requires Beagle to successfully complete substance-abuse testing and/or treatment approved by the probation officer, pay for that treatment if the probation officer requires him to do so, and to abstain from using alcohol or other intoxicants during the course of any treatment. Similarly, the second special condition concerns potential participation in and completion of a residential/inpatient substance-abuse treatment program if it is deemed therapeutically appropriate, if the probation officer deems it necessary, and if Beagle is accepted into such a program. He must also follow the program facility's rules. Relevant to these conditions is the district court's observation that many or most of Beagle's "current problems are related to methamphetamine use and addiction." Supp. R., Vol. III at 22. And as the probation officer noted in his Superseding Supervised Release Violation Report (Superseding Report), even after Beagle had completed inpatient residential drug treatment in January 2019, he "continued to struggle maintaining compliance" by "fail[ing] to report for substance abuse testing and dual diagnosis treatment in February, March, and April 2019." *Id.*, Vol. II at 25.[7] Beagle argues the condition is unnecessary because he had no positive drug tests. But given Beagle's addiction history, we think the district court could reasonably infer from his avoidance of testing that he was likely abusing substances again and

---

[7] We note that Beagle made no objection to the Superseding Report.

14

would be likely to do so upon release from prison. Accordingly, the first and second conditions satisfy § 3583(d)(2) based on Beagle's addiction history and his need for continued treatment.

The third special condition prohibits Beagle from consuming any alcohol or possessing any alcoholic beverages. The record supports this condition. The Superseding Report points out that Beagle had "admitted to United States Probation that if he should relapse on alcohol, consequences would be as bad, if not worse than a relapse on methamphetamine (thus, the recommended alcohol restriction)." *Id.* at 27. Beagle argues that his admission means he was not abusing alcohol, and therefore the admission is not persuasive evidence that the alcohol restriction is reasonably related to his history. We disagree. It is reasonable to prohibit all alcohol consumption by a defendant with both a serious abuse history and an admitted concern about a potentially devastating relapse.

The fourth special condition requires Beagle to participate in and successfully complete mental-health treatment approved by the probation officer until released by the probation officer, and to pay for the treatment as the probation officer directs. The record supports that this condition is reasonably related to Beagle's history, characteristics, and need for continued mental-health care. It is not disputed that Beagle has a mental health disability, and the Superseding Report observes that, during his initial period of supervised release, Beagle was participating in mental health treatment. The probation officer also noted that such treatment remains available to Beagle and he had taken advantage of such opportunities in the past.

And although Beagle contends that because he has a limited income, it is unreasonable to give the probation officer authority to require him to pay for his mental-health treatment, nothing in the record suggests that the probation officer will require Beagle to pay for treatment if he cannot afford to do so.

We next consider the sixth special condition, which requires Beagle to submit to searches if the probation officer has reasonable suspicion that Beagle has violated any supervised-release conditions. In the Superseding Report, the probation officer reported that Beagle's criminal history included violence and drug distribution, his underlying conviction was his tenth felony conviction or adjudication and involved possession of multiple firearms, and Beagle again possessed firearms and ammunition while on supervised release. Accordingly, the probation officer recommended a search condition to protect the community and law enforcement, and to deter further criminal conduct. We easily conclude that this condition is reasonably related to such concerns. Beagle's only argument is that under § 3583(d), this condition may be imposed on a felon required to register under the Sex Offender Registration and Notification Act (SORNA), and there is no evidence that he is such a felon. While true, Beagle's argument presupposes that the sex-offender provision is the only authorization for a search condition. But § 3583(d) also authorizes a court to order "any other condition it considers to be appropriate." *See United States v. Flaugher*, 805 F.3d 1249, 1252 (10th Cir. 2015) (holding that § 3583(d)'s "any other condition" provision "plainly authorizes warrantless-search conditions for defendants who are not felons and who are not required to register under SORNA . . . so long as

16

the court considers the conditions appropriate and the § 3583(d)(1)-(3) limitations are met").

Finally, we turn to the fifth special condition, which requires Beagle to "remain medication compliant," to "take all medications that are prescribed by [his] treating psychiatrist," and to "cooperate with random blood tests as requested by [his] treating psychiatrist and/or supervising probation officer to ensure that a therapeutic level of [his] prescribed medications is maintained." Supp. R., Vol. I at 50. Based primarily on *United States v. Malone*, 937 F.3d 1325 (10th Cir. 2019), we conclude that Beagle has established all four prongs of plain error regarding this condition.

In *Malone*, we considered a challenge to a special condition that the defendant "take prescribed medication as directed by mental health staff or a treating physician." *Id.* at 1326 (internal quotation marks omitted). We observed that when a special condition "invades a fundamental right or liberty interest, the [district] court must justify the condition with compelling circumstances." *Id.* at 1327 (internal quotation marks omitted). We then explained that "a defendant on supervised release has a significant interest in avoiding the involuntary administration of psychotropic drugs," *id.* at 1327-28 (internal quotation marks omitted), and concluded that the defendant had established all prongs of plain-error review, *id.* at 1328. We also noted the government's concession that "this condition is currently being broadly imposed as a 'stock' special condition," and emphasized "that this condition, on its face, is an impermissible infringement into a defendant's significant liberty interests without the justifying support of particularized findings." *Id.* But instead of

17

remanding for the district court to make the necessary findings, we vacated the condition without possibility of resentencing because the record contained only "paltry details" about the need for the condition, and therefore it was "highly questionable whether the district court could have found compelling circumstances . . . even if it had properly embarked on such an inquiry." *Id.*

As in *Malone*, we conclude that Beagle has established all four prongs of plain error. But unlike *Malone*, the record here is not "paltry." As noted, Beagle has mental-health issues that have required treatment, and during his supervised release, he was taking five prescription medications for those issues, first through a county mental-health agency and then through his primary care physician. On this record, and given the heightened "compelling circumstances" standard, we decline to take up whether the fifth special condition is justified; the district court is better suited to that task in this case. And although not at issue in *Malone*, a condition of supervised release requiring a criminal defendant to submit to random blood tests to determine medication compliance invades a fundamental privacy right. *See Missouri v. McNeely*, 569 U.S. 141, 148 (2013) ("[A] compelled physical intrusion beneath [an individual's] skin and into his veins to obtain a sample of his blood" is "an invasion of bodily integrity [that] implicates an individual's most personal and deep-rooted expectations of privacy." (internal quotation marks omitted)). Accordingly, the entire fifth special condition requires particularized findings of compelling circumstances. *See Malone*, 937 F.3d at 1327; *see also United States v. De Luna*, 823 F. App'x 699, 700 (10th Cir. 2020) (unpublished) (relying on *McNeely* and

18

*Malone* in vacating special condition requiring blood-testing to ensure medication compliance).[8] We therefore vacate the sentence as to the fifth special condition only and remand to the district court with instructions to consider whether there are compelling circumstances that justify it. The court must provide particularized findings explaining its decision. We express no opinion on the merits of that inquiry.[9]

## IV. Conclusion

We vacate the fifth special condition of supervised release only and remand for further proceedings regarding that condition consistent with our decision. We affirm in all other respects.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[8] We may cite an unpublished decision for its persuasive value consistent with 10th Cir. R. 32.1(A).

[9] To the extent we have concluded that Beagle cannot meet the third prong of plain-error review regarding the special conditions, we need not reach the parties' arguments regarding the fourth prong.